UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HOLLY D. NEWSOME,**

    **Plaintiff,**

                            Civil Action 2:18-cv-497
                            Judge James L. Graham
    v.                          Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Holly D. Newsome ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Response in Opposition (ECF No. 22), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ for further consideration consistent with this Report and Recommendation.

### I.    BACKGROUND

Plaintiff protectively filed her application for Supplemental Security Income benefits on April 23, 2014. Plaintiff alleged a disability onset of September 15, 2012. Plaintiff's

applications were denied initially on September 12, 2014, and upon reconsideration on January 15, 2015.  Plaintiff sought a hearing before an administrative law judge.  Administrative Law Judge Gregory Moldafsky (the "ALJ") held a hearing on January 5, 2017, at which Plaintiff, represented by counsel, appeared and testified.  Vocational Expert Lynne M. Kaufman (the "VE"), also appeared and testified at the hearing.  On May 3, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  On March 28, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff asserts that the ALJ erred by failing to provide "good reasons" for declining to give the opinions of her treating physician, Michael Sayegh, M.D., controlling weight.

## II.    RELEVANT RECORD EVIDENCE

### A.    Treating Physician, Michael Sayegh, M.D.

In September 2014, Plaintiff's pain management doctor, Dr. Sayegh, completed an evaluation form on her behalf.  (R. at 551.)  Dr. Sayegh stated that he first treated Plaintiff on December 4, 2013, and that he had last seen her on September 4, 2014.  (*Id.*)  He diagnosed Plaintiff with lumbago, sciatica, sprain/strain, facet syndrome, HNP, degenerative disc disease, abdominal pain, cellulitis, protein S deficiency, varicose veins, pelvic vascular congestion, depression, sleep disturbance, and anxiety.  (*Id.*)  Dr. Sayegh identified the following findings on clinical examination related to Plaintiff's conditions: lumbar paraspinal muscle tenderness, trigger points, decreased sensation to the lateral aspect of her left lower extremity, positive

2

bilateral straight leg lift at 60 degrees. (*Id.*) Dr. Sayegh also referenced Plaintiff's lumbar MRI from March 30, 2014, which revealed facet osteoarthropathy and focal central disc protrusion. (*Id.*; *see also* R. at 423.) Dr. Sayegh stated that Plaintiff's conditions are treated with medication management of Flexeril and Norco, and that she reports that medication helps. (R. at 551-52.) Dr. Sayegh opined that Plaintiff's impairments impose the following limitations on Plaintiff's ability to perform work: (1) "no sitting, bending, stooping for long periods of time;" (2) "pt must take 15 min breaks every 1-2 hrs;" and (3) "no lifting of heavy objects more than 5-10 pounds." (R. at 552.)

**B.     The Administrative Decision**

On May 3, 2017, the ALJ issued his decision. (R. at 10-29.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

3

gainful activity since April 23, 2014, the application date. (*Id.* at 12.) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, obesity, protein S deficiency,[2] depressive disorder, and anxiety disorder. (*Id.*) He further found that Plaintiff had the non-severe impairments of gastroesophageal reflux disease (GERD), hyperlipidemia, pelvic vascular congestion, and dermatitis. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 14.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant could stand and/or walk for 15 minutes at a time for a total of 2 hours out of an 8-hour workday. The claimant could sit for 6 hours out of an 8-hour workday. She could occasionally climb ramps and stairs, but would be precluded from climbing ladders, ropes, and scaffolds. She could occasionally stoop and kneel, but would be precluded from crouching and crawling. The claimant should avoid exposure to extreme cold and vibrations. She should avoid exposure to unprotected heights, moving mechanical parts, and operating a commercial vehicle. Further, the claimant could perform simple, routine tasks in a work environment that is not fast pace[d] or does not have unusual production demands—defined as goal based production where work is measured by the end result, not pace work.

(*Id*. at 16.)

In assessing Plaintiff's RFC, the ALJ considered the medical opinions in the record,

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2. "Protein S deficiency is a disorder that causes abnormal blood clotting." Protein S deficiency, National Center for Advancing Translational Sciences, Genetic and Rare Diseases Information Center (Mar. 4, 2013), https://rarediseases.info.nih.gov/diseases/4524/protein-s-deficiency/cases/21328#417.

4

including the opinions of Plaintiff's treating physician, Dr. Sayegh. The ALJ assessed "some" weight to Dr. Sayegh's opinions, explaining as follows:

> The undersigned has considered the September 2014 statement provided by Dr. Sayegh, evidenced at Exhibit 9F some weight. The statement noted the claimant was precluded from lifting heavy objects or objects more than 5-10 [ ] pounds. He assessed the claimant could not sit, bend, or stoop for long periods of time and would need to take 15 minute breaks every 1-2 hours. The undersigned affords some weight to the physician assessment. The undersigned finds the lifting and carrying limitations persuasive, as they are generally consistent with the medical evidence of record, supporting a reduced range of sedentary exertional level work, as discussed above. The undersigned affords some weight to the noted limitation on prolonged bending/stooping as the evidence demonstrating a combination of physical condition exacerbated by her obese body habitus warrants the above assessed postural and environmental limitations, specifically those on stooping, kneeling, crouching, crawling, and climbing. The undersigned affords some weight regarding the need for the claimant to take breaks every 15 minutes e [sic]. The undersigned [h]as determined the claimant could not engage in standing or walking for more than 15 minutes at a time, which is not inconsistent with the provided statement. Therefore, the undersigned provides Dr. Sayegh some weight.

(R. at 25.)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy. (R. at 27-28.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 28-29.)

### III.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

5

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### IV. ANALYSIS

Plaintiff contends that the ALJ erred in weighing the opinion of her treating physician, Dr. Sayegh. More specifically, Plaintiff contends that the ALJ failed to provide good reasons for rejecting certain portions of Dr. Sayegh's opinion regarding her ability to sit and need for

6

breaks.  (Pl.'s Statement of Errors at 19-25, ECF No. 16.)  The Commissioner counters that the ALJ "provided several good reasons for declining to give controlling weight to Dr. Sayegh's opinion."  (Def.'s Mem. in Opp. at 12, ECF No. 22.)  The Commissioner further asserts that even if the ALJ did not expressly provide good reasons for rejecting Dr. Sayegh's opinions, he met the goal of the good reason rule by indirectly attacking them.  (*Id.* at 15.)  Finally, the Commissioner contends that, construed broadly, Dr. Sayegh's opinions are consistent with the assessed RFC.  (*Id.* at 15-16.)  The undersigned disagrees with the Commissioner and finds Plaintiff's sole contention of error to be well-taken.

The ALJ must consider all medical opinions that he receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis."  20 C.F.R. § 416.927(a)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

7

must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir.

8

2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

      Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

      Dr. Sayegh, a pain management specialist, treated Plaintiff for at least nine months and saw her on ten different occasions before rendering his opinions. (R. at 551; R. at 408-21, 557-62.) In his opinion, Dr. Sayegh diagnosed Plaintiff with the following conditions: lumbago, sciatica, sprain/strain, facet syndrome, HNP, degenerative disc disease, abdominal pain, cellulitis, protein S deficiency, varicose veins, pelvic vascular congestion, depression, sleep disturbance, and anxiety. (R. at 551.) Dr. Sayegh noted that, upon clinical examination of Plaintiff, he observed lumbar paraspinal muscle tenderness, trigger points, decreased sensation to the lateral aspect of her left lower extremity, and positive bilateral straight leg lift at 60 degrees. (*Id.*) He further referenced Plaintiff's lumbar MRI from March 30, 2014, which revealed facet osteoarthropathy and slight focal central disc protrusion at L5-S1. (*Id.*; *see also* R. at 423.) Dr. Sayegh's records further reveal findings of decreased sensation in the lateral aspect of Plaintiff's left lower extremity and varicose veins. (R. at 408-21, 557-62.) In September 2014, Dr. Sayegh opined that Plaintiff could not sit, bend, or stoop for long periods of time; must take 15-minute breaks every 1-2 hours; and could not lift more than 5-10 pounds. (R. at 552.)

As discussed above, the ALJ assigned "some" weight to treating physician Dr. Sayegh's opinions. Because the ALJ declined to give controlling weight to Dr. Sayegh's opinions, he was required to provide "good reasons" for assessing only "some" weight. As set forth above, the ALJ offered the following discussion of Dr. Sayegh's opinions:

> The undersigned has considered the September 2014 statement provided by Dr. Sayegh, evidenced at Exhibit 9F some weight. The statement noted the claimant was precluded from lifting heavy objects or objects more than 5-10 [ ] pounds. He assessed the claimant could not sit, bend, or stoop for long periods of time and would need to take 15 minute breaks every 1-2 hours. The undersigned affords some weight to the physician assessment. The undersigned finds the lifting and carrying limitations persuasive, as they are generally consistent with the medical evidence of record, supporting a reduced range of sedentary exertional level work, as discussed above. The undersigned affords some weight to the noted limitation on prolonged bending/stooping as the evidence demonstrating a combination of physical condition exacerbated by her obese body habitus warrants the above assessed postural and environmental limitations, specifically those on stooping, kneeling, crouching, crawling, and climbing. The undersigned affords some weight regarding the need for the claimant to take breaks every 15 minutes e [sic]. The undersigned [h]as determined the claimant could not engage in standing or walking for more than 15 minutes at a time, which is not inconsistent with the provided statement. Therefore, the undersigned provides Dr. Sayegh some weight.

(R. at 25.)

The undersigned concludes that the ALJ failed to provide good reasons for rejecting Dr. Sayegh's opinion that Plaintiff is unable to sit for long periods of time. Indeed, the ALJ failed to even discuss Dr. Sayegh's opinion that Plaintiff is unable to sit for long periods of time. Rather, without any discussion regarding whether Plaintiff required limitation on the total amount or the length of time she could sit without a break, the ALJ concluded that Plaintiff "could sit for *six hours* out of an 8-hour workday." (R. at 16 (emphasis added).)

The undersigned concludes that the ALJ's violation of the good reason rule was not

harmless error. The *Wilson* Court considered three possible scenarios that could lead the Court to a finding of harmless error. 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id.* Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Id.* Since *Wilson*, the Sixth Circuit has continued to conduct a harmless error analysis in cases in which the claimant asserts that the ALJ failed to comply with the good-reason requirement. *See, e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. A'ppx 462, 472 (6th Cir. 2006) (finding that even though the ALJ failed to meet the letter of the good-reason requirement the ALJ met the goal by indirectly attacking the consistency of the medical opinions); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (finding that the facts did not satisfy potential harmless error justifications).

The Commissioner's assertion that Dr. Sayegh's opinion that Plaintiff required "no sitting, bending, stooping for long periods of time," (R. at 552), is too vague to be accommodated is belied by the ALJ's discussion and crediting of Dr. Sayegh's opinion that Plaintiff could not bend or stoop for prolonged periods, which he accommodated by limiting Plaintiff to only occasional stooping. (R. at 16, 25.); SSR 83-14 (defining "stooping" as "bending the body downward and forward by bending the spine at the waist" and "occasionally"

11

as from very little up to one-third of the time"); *cf. Allen v. Comm'r of Soc. Sec.*, No. 1:13-cv-171, 2014 WL 1093139, at *6 (N.D. Ohio Mar. 17, 2014) ("[T]he fact that the ALJ at least gave partial weight to Dr. Svete's findings means that the ALJ's failure to articulate a good reason for the weight given cannot be excused on the grounds that Dr. Svete's opinion was patently deficient."). Without explanation, however, the ALJ did not similarly limit Plaintiff to sitting only occasionally, instead concluding that she could sit for *six hours* per day. Moreover, in addition to offering his opinion about Plaintiff's limitations, Dr. Sayegh discusses Plaintiff's impairments, diagnoses, symptoms, medications, and diagnostic testing, and the record contains Dr. Sayegh's treatment records. Finally, the record contains evidence reflecting that Plaintiff had several physical severe impairments that could impact her ability to sit for prolonged periods, including obesity, degenerative joint disease of her right knee, degenerative disc disease of her lumbar spine, and protein S deficiency, as well as varying abnormalities in her lower extremities, including venous reflux, severe valvular incompetence (chronic venous insufficiency), filling defects, calcification, edema, deep vein thrombosis, pain, tibial venous embolism, thrombosis, claudication, superficial thrombophlebitis, and phlebitis. (R. at 280-83, 243, 248-57, 260-61, 267, 286-88, 293-94, 301.); *See Perry v. Acting Comm'r of Soc. Sec.,* No. 17-cv-13386, 2019 WL 759289, *5 (E.D. Mich. Jan. 23, 2019) (treating physician's opinion not patently deficient where "at least some objective medical evidence appears to support [the opinion]"); *Miller v. Berryhill*, No. 3:16-cv-00094, 2017 WL 1021313, *9 (S.D. Ohio Mar. 16, 2017) (finding an opinion was not patently deficient where "[t]he record . . . contains evidence consistent with [the] opinion"); *Congrove v. Comm'r of Soc. Sec.*, No. 2:15-cv-2630, 2016 WL 3097153, *5 (S.D. Ohio June 3, 2016) ("If treatment notes support the physician's findings, an

12

opinion is not patently deficient"). Indeed, another of Plaintiff's treating physicians, Dr. Jentes, also concluded that Plaintiff could not tolerate prolonged sitting and that she would need to change positions as needed, explaining that she has "limited vascular capacity of lower leg." (R. at 665.) For these reasons, the undersigned cannot conclude that Dr. Sayegh's opinion was so patently deficient that the ALJ's failure to acknowledge and weigh it constitutes harmless error.

Nor can the undersigned conclude that the ALJ's error is harmless because the RFC assessed is consistent with Dr. Sayegh's opinion. As noted above, ALJ accommodated Dr. Sayegh's opinion that Plaintiff required "no sitting, bending, stooping for long periods of time," in part by limiting her to only occasional stooping, but failed to consistently limit her to only occasional sitting, instead concluding, without explanation, that Plaintiff could sit for six hours per day. (R. at 552.) Perhaps recognizing this inconsistency, the Commissioner attempts to combine Dr. Sayegh's opinion that Plaintiff required "no sitting, bending, stooping for long periods of time" with another of his opinions—that Plaintiff "must take 15 min breaks every 1-2 hrs"—to argue that construing Dr. Sayegh's opinions broadly, ALJ's RFC is consistent with Dr. Sayegh's opinion because sedentary work contemplates 15-min breaks at 2-hour intervals. (*See* Comm'r Mem. in Opp. 15-16, ECF No. 22.) The undersigned acknowledges that individuals typically receive breaks every two hours. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 730 (6th Cir. 2013) (citing SSR 96–9p, 61 Fed. Reg. 34478) (recognizing that an individual receives a morning break, a lunch period, and an afternoon break in approximately two-hour intervals). But such an argument fails for two reasons. First, Dr. Sayegh's opinion that Plaintiff required regular breaks from all work activity is distinct and in addition to his more

13

specific opined limitation that Plaintiff could not sustain prolonged sitting, bending, or stooping. Even the ALJ acknowledged that this was a distinct limitation in that he both addressed and accommodated it separately to conclude that Plaintiff required limits on her standing and walking activities. Second, it assumes that the ALJ considered the opinions together and construed them broadly. As discussed above, there is no indication that the ALJ considered Dr. Sayegh's opinion relating to sitting, and his discussion reveals that he actually construed Dr. Sayegh's opinion that Plaintiff required breaks narrowly to conclude that she requires breaks every 15 minutes. (*See* R. at 25.)

The undersigned also cannot say that the ALJ's error was harmless because it met the goal of the good-reason requirement by indirectly attacking the consistency of Dr. Sayegh's opinion that Plaintiff could not sit for a prolonged period. Nowhere in his opinion does the ALJ explain why he concluded that Plaintiff could sit for six hours in a work day. Notably, the ALJ likewise failed to explain why he rejected the opinion of treating physician Dr. Jentes that Plaintiff could not sit for more than 30 minutes and required the ability to change positions as needed. The Commissioner appears to argue that any error by the ALJ was harmless because the ALJ indirectly attacked opinions suggesting greater restrictions by assigning weight to the opinion of state-agency reviewing physician Dr. Perencevich. (Comm'r Mem. in Opp. 14, ECF No. 22.) This argument also fails, however, because the ALJ declined to adopt Dr. Perencevich's opinion, instead assigning it only "some weight" on the grounds that the record showed that Plaintiff was more restricted than Dr. Perencevich opined and also because the ALJ agreed with and accommodated several of the very same opinions of Dr. Sayegh that Dr. Perencevich rejected. Because the undersigned cannot otherwise trace the ALJ's path of

14

reasoning or discern what evidence the ALJ relied upon to reject the opinions of Drs. Sayegh and Jentes relating to Plaintiff's ability to sustain prolonged sitting, remand is required. *See Rogers*, 486 F.3d at 243 (explaining that one of the purposes of the good reason requirement is to ensure meaningful appellate review of the ALJ's application of the treating physician rule); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (finding that "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). *See also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 472 (6th Cir. 2006) (noting that it is "rare" for the ALJ's analysis to meet "the goal of the rule even if not meeting its letter").

Finally, the undersigned declines the Commissioner's invitation to weigh the evidence to conclude that substantial evidence does not support further limitation on Plaintiff's ability to sit. As the Sixth Circuit has recognized:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion, thus, a different outcome on remand is unlikely. A procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway. To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Wilson* 378 F.3d at 546.

For these reasons, it is **RECOMMENDED** that Plaintiff's contention of error be **SUSTAINED**.

## V. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to

the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). The undersigned therefore **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                     /s/ *Chelsey M. Vascura*
                                     CHELSEY M. VASCURA
                                     UNITED STATES MAGISTRATE JUDGE